# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY – TRENTON VICINAGE

JEFFREY G. WALSTEIN,
Plaintiff,

v.

SERGEANT JOSEPH SCHULER, in his individual and official capacities,
TINTON FALLS POLICE DEPARTMENT, and
BOROUGH OF TINTON FALLS,
Defendants.

Civil Action No. 3:25-CV-14491-MAS-RLS

# AMENDED COMPLAINT
# AND JURY DEMAND

## AMENDED COMPLAINT

Plaintiff, Jeffrey George Walstein, brings this action under 42 U.S.C. § 1983 and related law to redress violations of his constitutional rights arising from events that occurred on or about September 17, 2023, involving the Tinton Falls Police Department and Sergeant Joseph Schuler. New evidence obtained by the OPRA necessitates this amended complaint.

RECEIVED

SEP 2 5 2025

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

## I. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in Monmouth County, New Jersey, within the District of New Jersey.

## II. PARTIES

4. Plaintiff Jeffrey G. Walstein is an adult individual residing in Tinton Falls, New Jersey.

5. Defendant Sergeant Joseph Schuler is, and at all relevant times was, a law enforcement officer employed by the Tinton Falls Police Department. He is sued in both his individual capacity and his official capacity as an agent of the Borough of Tinton Falls.

6. Defendant Tinton Falls Police Department is the municipal police department for the Borough of Tinton Falls.

7. Defendant Borough of Tinton Falls is a New Jersey municipal corporation responsible for the policies, practices, and customs of its police department.

## III. STATEMENT OF FACTS

8. On September 17, 2023, at approximately 12:50 p.m., Plaintiff placed a telephone call to the New Jersey State Police to report an issue occurring on the Garden State Parkway.

9. Plaintiff initially received no answer from Troop D – Holmdel Station. He remained persistent, and after several failed attempts, was able to reach a member of the New Jersey State Police Troop "D" - Holmdel Station.

10. Upon information and belief, the New Jersey State Police and/or Monmouth County dispatch subsequently contacted the Tinton Falls Police Department ("TFPD") with a request to perform a "wellness check" on Plaintiff at his residence in Tinton Falls, New Jersey. This request was not based on any specific, articulable facts indicating that Plaintiff was in danger, injured, suicidal, or otherwise in need of immediate aid. Rather, Plaintiff alleges that the request was made in retaliation for Plaintiff's lawful complaints and persistence during his earlier phone call. The asserted basis for the wellness check and subsequent traffic stop was fabricated and pretextual, serving only as a cover for retaliation against Plaintiff's constitutionally protected speech.

11. Shortly thereafter, three marked TFPD SUVs arrived and parked at the top of Plaintiff's residential court.

12. Despite the dispatch request, none of the TFPD officers approached Plaintiff's home, knocked on his door, or attempted to initiate any form of contact with him.

13. While the officers remained parked at the top of the court, Plaintiff exited his home and entered his vehicle to drive to a supermarket, passing the officers in the process.

14. At approximately 1:45 p.m., Plaintiff was pulled over by TFPD officers in the parking lot of 766 Shrewsbury Avenue, Tinton Falls, New Jersey.

15. The stated reason for the stop was that Plaintiff's vehicle allegedly lacked a front license plate.

16. Plaintiff was issued two citations by the officers. No wellness check was attempted or conducted at any time during the encounter.

17. Following the issuance of the citations, Plaintiff immediately drove to the TFPD headquarters to engage in constitutionally protected activity: filming the exterior of the police station and its parking lot to document alleged violations of the same front license plate statute by TFPD vehicles.

18. Prior to Defendant Joseph Schuler's use of force, Plaintiff had already entered the Tinton Falls Police Department building, spoken directly with a lieutenant, and affirmatively demonstrated that he was unarmed. TFPD was aware, or reasonably should have been aware, that Plaintiff posed no threat to officer safety. At the time of the subsequent encounter, Plaintiff and Defendant Joseph Schuler were separated by a chain-link fence, and there was no lawful basis to believe Plaintiff was engaged in any criminal activity or that he posed an immediate threat to anyone

19. While Plaintiff was lawfully filming from a public vantage point, he requested Defendant Sergeant Joseph Schuler issue the same front license plate citation to every vehicle in the parking lot that was in violation. Sergeant Joseph Schuler denied this request citing "discretion". Plaintiff then asserted to Sergeant Schuler that there is unequal enforcement of the law.

20. Defendant Sergeant Joseph Schuler then approaches Plaintiff under the guise of initiating a conversation.

21. At the time of this exchange, Plaintiff and Defendant Joseph Schuler were the only individuals present in the vicinity. There were no members of the public within hundreds of feet, if any at all, and no one could possibly hear the conversation other than the parties themselves. Plaintiff made a crude but constitutionally protected remark directed at Defendant Schuler.

22. Immediately thereafter, Defendant Schuler physically seized and arrested Plaintiff, under the pretext of "disorderly" behavior, despite the absence of any member of the public to witness or be disturbed by the remark.

23. Sergeant Joseph Schuler's incident report contains demonstrable falsehoods contradicted by his own and Officer Volker's body-worn cameras, and defendant's own statements.

24. Without warning or lawful justification, Sergeant Joseph Schuler physically grabbed Plaintiff, slammed him against a chain-link fence, handcuffed him, and placed him under arrest.

25. Sergeant Joseph Schuler never verbally announced that Plaintiff was under arrest prior to seizing him. During the apprehension, Sergeant Joseph Schuler is recorded first saying "Thank you very much. Stay over here. Thank you. Thank you. You wanna be jerkoff?"

26. After initiating physical contact, Sergeant Joseph Schuler falsely says "Go ahead, you wanna resist? Stop resisting, stop resisting. You are resisting." despite Plaintiff clearly not resisting in any way as shown on Sergeant Joseph Schuler's own body camera footage and also body camera footage from Officer Volker.

27. Defendant Joseph M. Schuler then states "Have you not been watching the news for like the past five years". Implying that Plaintiff was in some way a threat to officer safety.

28. Plaintiff asserts there was no need for any arrest or physical contact in order to issue the disorderly conduct citation, as the officers already had Plaintiff's name, address, and other identifying information and could have mailed such citation if appropriate.

29. Plaintiff was transported to the TFPD facility, insulted, placed in a holding cell, and detained for approximately one hour before being released without charges.

30. While in custody, Sergeant Joseph Schuler demeaned and insulted Plaintiff, including telling him his breath 'stinks like shit'.

31. While in custody, police body cameras were either turned off, or pixelated, resulting in loss of video while audio continued, raising concerns of deliberate tampering or suppression.

32. At all relevant times, Plaintiff's conduct—filming in a public place and criticizing police enforcement practices—was lawful and constituted speech protected by the First Amendment to the United States Constitution.

33. The acts of Sergeant Joseph Schuler were undertaken under color of state law and plaintiff asserts retaliation for exercising his constitutional rights.

34. Plaintiff is informed and believes, and thereon alleges, that the Tinton Falls Police Department and/or the Borough of Tinton Falls possess body-worn camera footage, dispatch recordings, police station surveillance video, and other digital evidence documenting the events described herein. Plaintiff will seek production of this evidence during discovery.

## IV. STATEMENT OF FACTS – MONELL CLAIM

### State v. Idivine Clark
35. Officer Joseph Schuler has a documented history of violating citizens' Fourth Amendment rights. In State v. Idivine Clark, Docket No. A-3977-10T4 (App. Div. Apr. 3, 2013), both the trial court (Hon. Daniel M. Waldman, J.S.C.) and a two-judge Appellate Division panel held that Schuler's warrantless search of Clark's person and seizure of $866 in cash was unconstitutional

and lacked any legal justification. Despite these judicial findings, the TFPD Internal Affairs Unit concluded on August 13, 2013, that the complaint against Joseph Schuler was "not sustained," imposing no discipline and taking no corrective action. This failure to hold Officer Joseph Schuler accountable sent a clear message to TFPD officers that constitutional violations would not be punished.

### Reardon v. Borough of Tinton Falls

36. In Matthew J. Reardon v. Borough of Tinton Falls, et al., Docket No. MON-L-2606-16 (N.J. Super. Ct., Law Div., filed 2016), the plaintiff alleged that on December 22, 2014, he was arrested at his home by TFPD officers after posting an "offensive but constitutionally protected opinion" critical of police on Facebook. Defendant Joseph Schuler personally signed the criminal complaint initiating the prosecution, which charged Reardon with aggravated assault and terroristic threats — both third-degree crimes — despite the absence of probable cause. Reardon was subjected to $75,000 bail (no 10% option) and detained for eight (8) days in maximum-security lockdown, 23 hours per day. On July 10, 2016, the Honorable Lisa Thornton dismissed all charges against Reardon, explicitly noting there was no basis for his arrest and prosecution. This incident further demonstrates that TFPD, including Defendant Joseph Schuler, engaged in a pattern of targeting individuals for retaliation after protected speech and that Borough officials failed to take corrective action despite judicial findings of misconduct.

37. Upon information and belief, there are additional incidents of constitutional violations by TFPD officers, including Defendant Joseph Schuler, similar in nature to those described above. Plaintiff intends to obtain and present such evidence through discovery, and through the OPRA, including Internal Affairs records, prior citizen complaints, and disciplinary histories, to further demonstrate the Borough's and TFPD's pattern and practice of unconstitutional conduct.

## V. CAUSES OF ACTION

### COUNT 1 – FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

38. Plaintiff repeats and re-alleges each and every preceding paragraph as if fully set forth herein.

39. Defendant(s) engaged in acts in retaliation for Plaintiff's protected speech, including but not limited to the statements made prior to his unlawful detention and/or arrest.

40. Said acts were taken under color of state law and were intended to deter Plaintiff from exercising his rights under the First Amendment.

41. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages including emotional distress, reputational harm, and other losses.

42. Defendant Joseph Schuler implied "Terrorism/Officer Safety" rhetoric to justify his actions.

43. The same rhetoric can be seen on video used by Lt. John Tallarico on November 18, 2016. Establishing a clear pattern of fabricating probable cause against citizens exercising their first amendment rights.

## COUNT 2 – UNLAWFUL SEIZURE / FALSE ARREST
## FOURTH AMENDMENT (42 U.S.C. § 1983)

44. Plaintiff repeats and re-alleges each and every preceding paragraph as if fully set forth herein.

45. Defendant(s) unlawfully seized and/or arrested Plaintiff without probable cause in violation of the Fourth Amendment to the United States Constitution.

46. The seizure was unreasonable and not supported by any valid warrant or exigent circumstances.

47. Defendant Joseph Schuler fabricated the public presence, as shown on his body camera footage, to establish probable cause for disorderly conduct.

48. No witness names, statements, or complaints were taken by Defendant Joseph Schuler as there were no public witnesses present.

49. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages including loss of liberty, emotional distress, and reputational harm.

## COUNT 3 - EXCESSIVE FORCE – FOURTH AMENDMENT (42 U.S.C. § 1983)

50. Plaintiff repeats and re-alleges each and every preceding paragraph as if fully set forth herein.

51. Defendant(s) used force against Plaintiff that was excessive under the circumstances and objectively unreasonable, in violation of the Fourth Amendment.

52. Said force was applied maliciously and sadistically for the very purpose of causing harm, and not in a good-faith effort to maintain or restore discipline.

53. As a direct and proximate result of Defendants' use of excessive force, Plaintiff suffered physical injury, emotional distress, and other damages.

## COUNT 4 – FOURTEENTH AMENDMENT
## DUE PROCESS VIOLATIONS (42 U.S.C. § 1983)

54. Upon reviewing evidence obtained by OPRA, Plaintiff now alleges Defendant Joseph Schuler fabricated probable cause, fabricated charges, made false statements on official police reports, and introduced tampered evidence, depriving Plaintiff of liberty without proper due process of law.

55. Police Body Cameras were either powered off, and/or intentionally pixelated while Plaintiff was in custody inside the Police Station. This construes fabrication and/or tampering with evidence and exculpatory evidence.

56.  By deliberately fabricating both the disorderly conduct and resisting arrest charges, and by including knowingly false statements in official reports, Sergeant Joseph Schuler deprived Plaintiff of liberty without due process of law.

## COUNT 5 – MALICOUS PROSECUTION (42 U.S.C. § 1983)

57. The initiation of proceedings was based not on mistake or misinterpretation, but on fabricated facts manufactured by Defendant Sergeant Joseph Schuler for the purpose of justifying Plaintiff's unlawful arrest.

58. Defendant Sergeant Joseph Schuler fabricated the public presence to establish probable cause for the disorderly conduct arrest and fabricated the accusation of resisting arrest which is contradicted by his own Body Camera as well as Officer Volker's Body Camera footage.

59. Defendant Sergeant Joseph Schuler initiated criminal proceedings against Plaintiff without probable cause, with malice.

## COUNT 6 – SELECTIVE AND RETALIATORY ENFORCEMENT (42 U.S.C. § 1983) Equal Protection Clause – Fourteenth Amendment

60.  Defendants enforced laws selectively and in retaliation for Plaintiff's protected conduct, while ignoring comparable violations by officers themselves.

61. Plaintiff was issues traffic citations for infractions that officers themselves were also in clear violation of. Specifically, No Front License Plate.

## COUNT 7 – MUNICIPAL LIABILITY – FAILURE TO TRAIN/SUPERVISE (Monell, 42 U.S.C. § 1983)

62.  Plaintiff repeats and re-alleges each and every preceding paragraph as if fully set forth herein.

### A. Policy, Custom, or Practice Resulting in Constitutional Violations

63.  Defendant Borough of Tinton Falls ("Borough") and its Police Department ("TFPD") created a culture, and maintained and permitted official customs, policies, and/or practices that were the moving force behind the violation of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

64.  These customs, policies, and/or practices include, but are not limited to:

65. Failing to adequately train and supervise officers on the constitutional limits of searches, seizures, detentions, arrests, and retaliation against protected speech.

66. Failing to discipline officers who engage in unconstitutional conduct, thereby encouraging such conduct.

67. Permitting Internal Affairs ("IA") investigations to exonerate officers despite clear judicial findings or compelling evidence of constitutional violations.

68. Maintaining a culture in which officers understand they can act outside constitutional boundaries without fear of meaningful consequences.

## B. Pattern of Misconduct and Lack of Accountability

### State v. Idivine Clark

69. Officer Joseph Schuler has a documented history of violating citizens' Fourth Amendment rights.

70. In State v. Idivine Clark, Docket No. A-3977-10T4 (App. Div. Apr. 3, 2013), both the trial court (Hon. Daniel M. Waldman, J.S.C.) and a two-judge Appellate Division panel held that Officer Joseph Schuler's warrantless search of Clark's person and seizure of $866 in cash was unconstitutional and lacked any legal justification.

71. Despite these judicial findings, the TFPD Internal Affairs Unit concluded on August 13, 2013, that the complaint against Officer Joseph Schuler was "not sustained," imposing no discipline and taking no corrective action.

### Reardon v. Borough of Tinton Falls

72. In Matthew J. Reardon v. Borough of Tinton Falls, et al., Docket No. MON-L-2606-16 (N.J. Super. Ct., Law Div., filed 2016), the plaintiff alleged that on December 22, 2014, he was arrested at his home by TFPD officers after posting an "offensive but constitutionally protected opinion" critical of police on Facebook.

73. Defendant Joseph Schuler personally signed the criminal complaint initiating the prosecution, which charged Reardon with aggravated assault and terroristic threats — both third-degree crimes — despite the absence of probable cause.

74. Reardon was subjected to $75,000 bail (no 10% option) and detained for eight (8) days in maximum-security lockdown, 23 hours per day.

75. On July 10, 2016, the Honorable Lisa Thornton dismissed all charges against Reardon, explicitly noting there was no basis for his arrest and prosecution.

76. Reardon alleged — and the dismissal supports — that his arrest was in retaliation for his protected speech, in violation of the First Amendment, and also constituted an unlawful seizure under the Fourth Amendment.

**Video footage of Lt. John Tallarico uploaded to YouTube on November 18, 2016 by Jen Coombs.**

77. The video footage shows Lt. John Tallarico, intentionally misrepresenting the law and citing "Terrorism/Officer Safety" as his reason for preventing Ms. Jen Coombs from exercising her constitutionally protected right to film inside a public Municipal building.

78. The video footage of Lt. Tallarico can be found on Ms. Coombs YouTube channel by the name of "Time to Change-Jersey Style" uploaded on November 18th 2016.

79. This footage demonstrates a culture and pattern with the TFPD showing clear contempt of First Amendment Auditors and citizens exorcising their constitutionally protected rights.

## C. Deliberate Indifference

80. The Borough and TFPD were on actual notice of both the Clark and Reardon incidents, each of which involved serious constitutional violations by TFPD officers, including Schuler.

81. In each case, the Borough and TFPD failed to impose discipline, change policy, or provide remedial training.

82. This persistent inaction demonstrates a pattern of deliberate indifference to constitutional rights, creating an environment in which officers understood they could engage in unlawful searches, seizures, arrests, and retaliatory conduct without fear of meaningful consequences.

## D. Causation

83. As a direct and proximate result of the Borough's and TFPD's customs, policies, practices, and deliberate indifference, Plaintiff suffered violations of constitutional rights, emotional distress, reputational harm, and other damages in an amount to be determined at trial.

84. Plaintiff incorporates by reference Exhibits A through C attached hereto, which demonstrate prior incidents of similar constitutional violations by Defendant Sergeant Joseph Schuler and other TFPD officers, and the Borough's failure to discipline or retrain.

85. Plaintiff reserves the right to make additions to this Exhibit List as more evidence is obtained during discovery and/or OPRA requests.

## COUNT 8 – PUNITIVE DAMAGES

86. Defendant Sergeant Joseph Schuler's conduct, under color of law, was dishonest., malicious, wanton, and reckless, entitling Plaintiff to punitive damages.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award:

A. Compensatory damages in an amount not less than $150,000
B. Punitive damages against Defendant Joseph Schuler in his individual capacity;
C. Pre- and post-judgment interest as allowed by law;
D. Injunctive relief requiring the Borough of Tinton Falls to adopt policies, training, and supervision sufficient to prevent future violations of constitutional rights; and
E. Attorney's fee should Pro Se Plaintiff bring in outside council to help or assist.
F. Such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: 9-25-25

Respectfully submitted,

Jeffrey G. Walstein
Plaintiff, Pro Se
9 Gloria Court
Tinton Falls, NJ 07724
908-489-0737
jwalstein@yahoo.com

# EXHIBIT LIST

Plaintiff Jeffrey G. Walstein respectfully submits the following exhibits in support of his Monell Claim.

**Exhibit A** – Appellate Division Opinion in State v. Idivine Clark, Docket No. A-3977-10T4 (N.J. Super. Ct. App. Div. Apr. 3, 2013), holding that Defendant Sergeant Joseph Schuler's warrantless search of a motorist and seizure of $866 in cash was unconstitutional and lacked legal justification.

**Exhibit A-1** – Internal Affairs Disposition, Joseph Schuler, August 13, 2013 ("Not Sustained"), reflecting the Borough of Tinton Falls' decision not to impose discipline or take corrective action despite judicial findings of unconstitutional conduct in State v. Clark.

**Exhibit B** – Court Order of Dismissal by the Honorable Lisa Thornton, July 10, 2016, dismissing all criminal charges against Matthew J. Reardon related to his December 22, 2014 arrest by TFPD, finding no legal basis for the charges.

**Exhibit B-1** – Civil Complaint in Matthew J. Reardon v. Borough of Tinton Falls, et al., Docket No. MON-L-2606-16 (N.J. Super. Ct., Law Div., filed 2016), alleging that Defendant Sergeant Joseph Schuler and other TFPD officers unlawfully arrested Mr. Reardon in retaliation for constitutionally protected speech posted on Facebook, in violation of the First and Fourth Amendments.

**Exhibit C** – Video uploaded on November 18, 2016 by Jen Coombs onto her YouTube channel by the name "Time to Change-Jersey Style" showing Lt. John Tallarico misrepresenting laws and showing clear contempt for her exorcising constitutionally protected activity. Specifically, filming inside a public municipal building.

Plaintiff reserves the right to supplement this exhibit list with additional evidence as it becomes available through discovery.