NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JEFFREY G. WALSTEIN,<br><br>Plaintiff,<br><br>v.<br><br>SERGEANT JOSEPH M. SCHULER, *et al.*,<br><br>Defendants. | Civil Action No. 25-14491 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Sergeant Joseph M. Schuler ("Schuler"), Tinton Falls Police Department ("TFPD"), and Borough of Tinton Falls's (the "Borough") (collectively, "Defendants") Motion to Dismiss (ECF No. 15) Plaintiff Jeffrey G. Walstein's ("Plaintiff") First Amended Complaint ("FAC") (ECF No. 14). Plaintiff opposed (ECF No. 16), and Defendants replied (ECF No. 19). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' motion is granted.

## I.    <u>BACKGROUND</u>[1]

Plaintiff alleges that on September 17, 2025, he placed several unanswered telephone calls to the New Jersey State Police concerning an incident on the Garden State Parkway. (FAC ¶¶ 8-9.) Dispatchers subsequently contacted TFPD officers to perform a wellness check on Plaintiff at his residence. (*Id.* ¶ 10.) Plaintiff observed three TFPD vehicles parked near his home, yet none of the officers attempted to conduct the wellness check for which they were dispatched. (*Id.* ¶¶ 11-12.) Shortly thereafter, Plaintiff exited his home and entered his vehicle to drive to the supermarket, passing the officers on the way. (*Id.* ¶ 13.) TFPD then conducted a traffic stop of Plaintiff's vehicle for lacking a front license plate and issued Plaintiff two traffic citations. (*Id.* ¶¶ 14-16.)

Following this interaction, Plaintiff drove to TFPD headquarters and spoke to a lieutenant. (*Id.* ¶¶ 17-18.) Plaintiff then began to film the exterior of the TFPD police station and its parking lot to document which vehicles were located there that similarly lacked front license plates. (*Id.* ¶ 18.) While Plaintiff was filming, Schuler approached Plaintiff and Plaintiff requested Schuler

---

[1] The Court accepts the factual allegations in Plaintiff's FAC as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

Additionally, for the purposes of deciding this Motion, the Court will consider two extraneous documents submitted by Defendants. First, the Court will consider the Municipal Court Certification of Disposition (Ex. K to Defs.' Mot., ECF No. 15-6) demonstrating that Plaintiff pled guilty to a municipal loitering offense as a matter of public record. *See Bolick v. Pennsylvania*, 473 F. App'x 136, 138 (3d Cir. 2012) (noting that on a motion to dismiss, "a court is permitted to look to matters of public record, including criminal case dispositions."). Second, the Court will consider Schuler's body camera footage with respect to Plaintiff's arrest because Plaintiff specifically references that footage in pleading his excessive force claim. (FAC ¶¶ 23, 26); *see Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (explaining that when "a document is integral to or explicitly relied upon in the complaint, [a court] may [ ] consider[ it] without converting the motion to dismiss into one for summary judgment"); *Vintzileos v. Borough of Lavallette*, No. 25-2200, 2025 WL 3247616, at *3-5 (D.N.J. Nov. 20, 2025) (considering police body camera footage on a motion to dismiss). Plaintiff has not disputed the authenticity of either document. (*See generally* Pl.'s Opp'n Br., ECF No. 16.)

to issue traffic tickets to every vehicle lacking a front license plate, like his own vehicle. (*Id.* ¶¶ 19-20.) Schuler declined Plaintiff's request, to which Plaintiff asserted that "there is unequal enforcement of the law." (*Id.* ¶¶ 19-21.)

During this interaction, Plaintiff alleges he made a crude remark toward Schuler. (*Id.* ¶ 21.) Schuler subsequently arrested Plaintiff for disorderly behavior. (*Id.* ¶ 22.) As Schuler was conducting his arrest, Plaintiff avers he was: (1) physically grabbed; and (2) slammed against a chain-link fence. (*Id.* ¶ 24.) Plaintiff contends that Schuler made various false statements indicating that Plaintiff was resisting arrest. (*Id.* ¶¶ 25-28.) Plaintiff was transported to the TFPD police station, placed in a holding cell, and detained for approximately one hour before being released. (*Id.* ¶ 29.) While in custody, Plaintiff alleges that Schuler "demeaned and insulted" Plaintiff. (*Id.* ¶ 30.)

Against that backdrop, Plaintiff filed the instant action on August 12, 2025 (ECF No. 1), and amended the Complaint on October 14, 2025 (*see* FAC). Plaintiff asserts the following causes of action against Defendants, all arising under 42 U.S.C. § 1983 ("Section 1983"): (1) First Amendment retaliation ("Count One"); (2) false arrest in violation of the Fourth Amendment ("Count Two"); (3) excessive force in violation of the Fourth Amendment ("Count Three"); (4) deprivation of due process in violation of the Fourteenth Amendment ("Count Four"); (5) malicious prosecution in violation of the Fourth Amendment ("Count Five"); (6) selective and retaliatory enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment ("Count Six"); (7) municipal liability for an unconstitutional policy or custom and failure to train or supervise ("Count Seven"); and (8) punitive damages ("Count Eight").[2] (*See generally* FAC.)

---

[2] Although not clearly stated in the FAC, the Court construes Counts One, Two, Three, Four, Five, Six, and Eight as asserted against Schuler, in both his individual and official capacity, and Count Seven as asserted against TFPD and the Borough.

3

Defendants moved to dismiss the FAC on October 23, 2025 (Defs.' Mot. ECF No. 15), and filed a brief in support of their motion (Defs.' Moving Br., ECF No. 15-4). Plaintiff opposed on October 27, 2025 (Pl.'s Opp'n Br., ECF No. 16), and Defendants replied on November 10, 2025 (Defs.' Reply Br, ECF No. 19).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[3] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a

---

[3] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

4

Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

In assessing a *pro se* plaintiff's complaint, the court construes a plaintiff's allegations liberally. *Beasley v. Howard*, 623 F. Supp. 3d 434, 439 (D.N.J. 2022) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Even under this liberal standard, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.    DISCUSSION

Defendants move to dismiss Plaintiff's FAC in its entirety.[4] (*See generally* Defs.' Moving Br.) Defendants contend that several of Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (*Id.* at 13-16.) For those claims that are not barred by *Heck*, Defendants argue that Plaintiff cannot state a claim upon which relief can be granted. (*Id.* at 16-31.) Defendants, additionally, aver that the individual capacity claims asserted against Schuler should be dismissed because he is entitled to qualified immunity. (*Id.* at 32-33.)

The Court begins its analysis with the relevant legal standard under Section 1983. It will then consider whether *Heck* bars any of the claims asserted by Plaintiff. Finally, the Court will assess whether Plaintiff adequately pled any of his remaining claims.[5]

---

[4] Defendants, alternatively, move for summary judgment. (*See generally* Defs.' Mot., ECF No. 15.) A district court should generally give a plaintiff notice and an opportunity to present his summary judgment materials to the court when it intends to convert a defendant's motion to dismiss to one for summary judgment. *See Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989). Because Plaintiff is proceeding *pro se* and since the Court has not required Plaintiff to submit a responsive statement of undisputed material facts, the Court does not convert the instant motion.

[5] For the reasons discussed herein, the Court will not reach the issue of qualified immunity.

A.    **Section 1983**

Section 1983 "provides a remedy for the violation of rights created by federal law." *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). To state a claim under Section 1983, a plaintiff must allege: "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Id.* (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). To act under color of law, a person must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). As relevant here, "[s]tate employment is generally sufficient to render the defendant a state actor" and that employee "acts under color of state law . . . while exercising his responsibilities pursuant to state law." *Id.* at 49-50 (internal quotations and citations omitted). Additionally, a municipality is amenable to suit under Section 1983 for its unconstitutional policies or customs. *Padilla v. Township of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004).

As an initial matter, the FAC must be dismissed as to TFPD and Schuler, in his official capacity. TFPD is not a person subject to suit under Section 1983 because a police department is "merely an administrative arm of the local municipality." *Id.* (quoting *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)). The Borough and TFPD are, instead, treated as a single entity for purposes of Section 1983 liability. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of [S]ection 1983 liability" (citation omitted)). Similarly, Schuler, in his official capacity, is not a person under Section 1983. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." (citation omitted)). Plaintiff's claims against Schuler, in his official capacity, are also claims asserted against the Borough. *See*

6

*Williams v. Reinhardt*, No. 15-0121, 2015 WL 2414889, at \*3 (D.N.J. May 19, 2025) ("A suit against a police officer in his official capacity represents only an alternative means by which to raise a claim against the entity of which the officer is an agent." (citation omitted)).

The Court accordingly dismisses the FAC in its entirety, with prejudice, as to only TFPD and Schuler, in his official capacity.[6] As such, the Borough and Schuler, in his individual capacity, are the only remaining defendants.[7]

### B.    *Heck*-Barred Claims

Defendants argue that Counts One, Two, Four, Five, Six, and Eight asserted against Schuler, in his individual capacity, are barred by *Heck*. (Defs.' Moving Br. 13-16.) In making this argument, Defendants rely on the Municipal Court's Certification of Disposition demonstrating that Plaintiff pled guilty and paid a fine for a loitering offense, in violation of Tinton Falls Municipal Code § 4-8.2, which was amended from an initial disorderly conduct charge in violation of N.J. Stat. Ann. § 2C:33-2A(1). (*See* Ex. K to Defs.' Mot., ECF No. 15-6.)

In *Heck*, the United States Supreme Court held that:

> in order to recover damage for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [Section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under [Section] 1983.

---

[6] Ordinarily, a claim vulnerable to dismissal should be dismissed without prejudice unless a prospective amendment is inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002). Here, any further attempt to name TFPD or Schuler, in his official capacity, as defendants would be futile and duplicative to the municipal liability claims asserted against the Borough.

[7] Because the claims against TFPD and Schuler, in his official capacity, were dismissed, the Court now uses "Defendants" to refer only to the Borough and Schuler in his individual capacity.

*Heck*, 512 U.S. at 486-87. In other words, *Heck* bars a Section 1983 action where a district court's judgment in favor of the plaintiff would "necessarily imply the invalidity of his conviction or sentence" unless that "conviction or sentence has already been invalidated." *Id.* at 487. To determine if the *Heck* bar applies, courts "must compare the content of the plaintiff's [Section] 1983 claims with the basis of [his] conviction." *Ortiz v. N.J. State Police*, 747 F. App'x 73, 77 (3d Cir. 2018) (citation omitted).

Although Plaintiff argues that he was not criminally convicted (Pl.'s Opp'n Br. *2), "municipal court proceedings to prosecute violations of ordinances are . . . criminal in nature[.]" *Township of Pennsauken v. Schad*, 733 A.2d 1159, 1166 (N.J. 1999). Accordingly, Section 1983 claims bearing a sufficient nexus to violations adjudicated in municipal court may be subject to the *Heck* bar. *See, e.g., Alexander v. Township of Guttenberg*, No. 21-15002, 2026 WL 113708, at *7-8 (D.N.J. Jan. 14, 2026) (finding that *Heck*-barred claims for false arrest, false imprisonment, malicious prosecution, and conspiracy where the plaintiff pled guilty to and was convicted of a municipal noise ordinance).

Here, Plaintiff's Counts One, Two, and Five each rest upon the allegation that Schuler fabricated the probable cause undergirding his decision to arrest and charge Plaintiff for disorderly conduct and resisting arrest. (*See* FAC ¶¶ 24, 39-49, 86.) That an officer lacked probable cause to effectuate an arrest is an essential element for such claims of false arrest, malicious prosecution, and First Amendment retaliation resulting in an arrest. *See Harvard v. Cesnalis*, 973 F.3d 190, 199, 203 (3d Cir. 2020) (listing elements for false arrest and malicious prosecution); *Walker v. Clearfield Cnty. Dist. Att'y*, 413 F. App'x 481, 483 (3d Cir. 2011) (enumerating elements for First Amendment retaliation). The entry of Plaintiff's guilty plea for loitering in the municipal court, however, establishes that probable cause for Plaintiff's arrest existed. *See Walker*, 413 F. App'x at

8

483 (noting that a plaintiff's "guilty plea—even for a lesser offense—does not permit a later assertion of no probable cause"); *Moran v. Hawthorne Police Dep't*, No. 24-9196, 2025 WL 842315, at \*4 (D.N.J. Mar. 18, 2025) (explaining the plaintiff's "guilty plea was and is valid and that the conviction conclusively established probable cause for the arrest"). Moreover, Plaintiff does not allege that his municipal court conviction was either reversed on appeal or expunged by executive order. (*See generally* FAC); *Heck*, 512 U.S. at 487. Counts One, Two, and Five are consequently barred under *Heck*. The Court next turns to Count Four—Plaintiff's Fourteenth Amendment due process claim.

Count Four is similarly premised on the notion that Schuler fabricated probable cause in connection with Plaintiff's arrest that deprived Plaintiff of his liberty interests. (FAC ¶¶ 54-59.) If the substantive right Plaintiff alleges that he is due under the Fourteenth Amendment is the right to "be free from [arrest or] criminal prosecution except upon probable cause," that is a right "grounded on the Fourth Amendment's prohibition on unreasonable searches and seizures." *Washington v. Hanshaw*, 552 F. App'x 169, 172-73 (3d Cir. 2014); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (citation modified)). Insofar as Plaintiff asserts a substantive due process claim resulting from an unconstitutional seizure, it is duplicative to Plaintiff's Fourth Amendment false arrest and

malicious prosecution claims and would be barred under *Heck* for the reasons discussed previously.[8]

The Court is not persuaded that *Heck* bars Counts Six and Eight for selective enforcement and punitive damages, respectively. In construing the FAC liberally, as the Court must, those claims could reasonably refer to circumstances unrelated to Plaintiff's disorderly conduct arrest. For example, in connection with his selective enforcement claim, Plaintiff alleges that he "was issued traffic citation for infractions [of which] the officers themselves were also in clear violation[.] Specifically, [n]o [f]ront [l]icense [p]late." (FAC ¶ 61.) Plaintiff's punitive damages claim refers to Schuler's conduct broadly, such that a liberal construction of the allegations could implicate Schuler's conduct as it relates to Plaintiff's excessive force claim. (FAC ¶ 86.) The Court will, instead, address whether Plaintiff states a claim upon which relief can be granted for Counts Six and Eight.

In sum, the Court dismisses Counts One, Two, Four, and Five, against Schuler, in his individual capacity, without prejudice because they are *Heck*-barred. *See Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (explaining that claims barred under *Heck* are dismissed without prejudice in the event the plaintiff's conviction or sentence is reversed, expunged, or invalidated).

---

[8] Plaintiff also does not state a claim for the deprivation of substantive due process based on the allegation that Schuler fabricated the evidence to establish probable cause for his arrest. *See Breakwater Treatment and Wellness Corp. v. City of Asbury Park*, No. 23-3661, 2025 WL 2663679, at *3 (D.N.J. Sep. 17, 2025) (noting that "[t]o adequately plead a substantive due process claim a plaintiff must allege that an arbitrary and capricious act deprived [him] of a protected . . . interest" cognizable under the Fourteenth Amendment and that the defendant's deprivation of such property interest shocked the conscience); *see Albright v. Oliver*, 510 U.S. 266, 272 (1994) (explaining that "[t]he protections of substantive due process have . . . been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." (citation omitted)).

10

C.     **Excessive Force (Count Three)**

Plaintiff alleges that Schuler "[w]ithout warning or legal justification physically grabbed Plaintiff, slammed him against a chain-link fence, handcuffed him, and placed him under arrest." (FAC ¶ 24.) Plaintiff additionally alleges that such physical contact was not necessary because Plaintiff was not resisting arrest as demonstrated by the body camera footage of the arresting officers. (*Id.* ¶ 26.) Plaintiff avers the force used was "applied maliciously and sadistically" to cause Plaintiff harm. (*Id.* ¶ 52.) Defendants argue that these allegations are refuted by the body camera footage, and that the force used by Schuler was necessary to effectuate Plaintiff's arrest. (Defs.' Moving Br. at 23.)

"The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (citation omitted). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abhraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." (emphasis in original)). A plaintiff must allege that the amount of force used was objectively unreasonable for a court to consider the "nature and quality of the intrusion on the individual's Fourth Amendment interests" balanced "against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396.

An arrest "necessarily carries with it the right to use some degree of physical coercion." *Id.*; *see also Groman*, 47 F.3d at 634 (noting that "[p]olice officers are privileged to commit a battery pursuant to a lawful arrest"). The body camera footage, here, shows that Schuler grabbed

11

and twisted Plaintiff's left arm to handcuff him, turned him around to face the fence, and held Plaintiff against the fence to effectuate the arrest for less than one minute. (*See generally* Ex. G to Defs.' Mot., ECF No. 15-6) As the arresting officers were applying handcuffs, Plaintiff attempted to twist his right arm free to continue recording the interaction on his cellphone and pulled his body away from the officers. (*Id.*) Schuler made physical contact with Plaintiff's right arm and upper body to prevent further movement while the handcuffs were being applied. (*Id.*) Contrary to the facts alleged, the body camera footage shows a *de minimis* use of force by Schuler.

Additionally, Plaintiff does not allege—nor does the body camera footage reveal—that he sustained a physical injury while being arrested. *See Bressi v. Brennen*, 823 F. App'x 116, 118-19 (3d Cir. 2020) (affirming dismissal of excessive force claim where plaintiff sustained no physical injury after alleging he was grabbed by the neck and slammed against a concrete wall "for no reason whatsoever" while being transported to a prison); *Pearson v. Krasley*, 715 F. App'x 112, 114 (3d Cir. 2017) (affirming dismissal of excessive force claim where plaintiff was not injured after an officer required him to lie on the ground at gunpoint during arrest for promoting prostitution); *Hughes v. Shestakov*, 76 F. App'x 450, 452 (3d Cir. 2003) (affirming no excessive force claim where officers bumped the plaintiff's head on the roof of the police van, jerked his shoulders, and gave him a "rough ride" to the police station). Plaintiff, accordingly, does not plausibly state a claim for excessive force.

The Court, therefore, dismisses Count Three against Schuler, in his individual capacity, without prejudice.

### D.    Selective Enforcement (Count Six)

Plaintiff alleges that Schuler engaged in selective enforcement of the laws by issuing Plaintiff a traffic citation for lacking a front license plate, while some of the officers' vehicles located at the TFPD police station similarly lacked a front license plate, and were not ticketed for that infraction. (FAC ¶¶ 14-19, 60-61.)

"The Equal Protection Clause [of the Fourteenth Amendment] prohibits the 'selective enforcement' of a law based on an unjustifiable standard." *PG Pub. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d Cir. 2006)). To state a claim for selective enforcement, a plaintiff must allege: "(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right." *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (internal citations and quotation omitted); *see also Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (stating that a plaintiff must show "discriminatory enforcement of a facially valid law").

Having reviewed the FAC in its entirety, the Court finds that Plaintiff does not state a claim for selective enforcement. Although Plaintiff asserts that he was treated differently than the TFPD officers who were alleged to be in violation of the same law, the pleadings are devoid of any fact suggesting that Plaintiff was similarly situated to the TFPD officers. *See Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) ("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992))); *Buck Foston's New Brunswick LLC v. Cahill*, No. 11-03731, 2013 WL 5435289, at *26 (D.N.J. Sep. 27, 2013) ("The Third Circuit consistently requires some additional showing beyond a plaintiff's assertion that other [individuals] are of the same general category as plaintiff . . . and engaged in the one similar incidence of conduct giving rise to plaintiff's cause of action . . . .").

13

Additionally, Plaintiff does not plead any facts indicating that Schuler issued the front license plate ticket with an intent to discriminate because of Plaintiff's race, religion, or some other arbitrary factor. *Dique*, 603 F.3d at 184 n.5; *see also Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) ("[T]o maintain an equal protection claim of this sort, [the plaintiff] must provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect."); *Glaesener v. City of Jersey City*, No. 19-18089, 2021 WL 4206297, at *6 (D.N.J. Sep. 15, 2021) (dismissing selective enforcement claim under Rule 12(b)(6) where complaint did not allege discriminatory purpose or intent to prevent the exercise of a fundamental right). And while Plaintiff alleges that Schuler exercised his discretion when he declined to issue traffic tickets to other vehicles for similar infractions (FAC ¶ 19), "[i]t is well-established that the conscious exercise of some selectivity in enforcement [of a law] is not in itself a federal constitutional violation[.]"*Aichele*, 705 F.3d at 115-16 (3d Cir. 2013) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

The Court, accordingly, dismisses Count Six against Schuler, in his individual capacity, without prejudice.

### E.  Municipal Liability (Count Seven)

Section 1983 claims against a municipality may proceed in two ways: (1) "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries"; or (2) a plaintiff may assert that the injuries "were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (quoting *Est. of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)). The former requires a plaintiff to "point to an official proclamation, policy[,] or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject" or a "course of conduct so well-settled and permanent as to virtually constitute law." *Id.* at 105-06

(internal citations omitted). The latter involves claims against the municipality for its failure to train, supervise, or discipline police officers. *Id.* at 106.

Plaintiff, here, brings a single municipal liability claim under both theories against the Borough. He alleges that the "Borough . . . created a culture, and maintained and permitted official customs, policies, and/or practices that were the moving force behind the violation of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution." (FAC ¶ 63.) Such customs and policies include, but are not limited to: (1) the failure to "adequately train and supervise officers on the constitutional limits of searches, seizures, detentions, arrests, and retaliation against protected speech"; (2) the failure "to discipline officers who engage in unconstitutional conduct"; (3) "[p]ermitting Internal Affairs . . . investigations to exonerate officers despite clear judicial findings or compelling evidence of constitutional violations"; and (4) "[m]aintaining a culture in which officers understand that they can act outside constitutional boundaries without fear of meaningful consequences." (*Id.* ¶¶ 64-68.)

Here, for the reasons already discussed, Plaintiff has failed to plausibly allege that he suffered a constitutional violation under the First, Fourth, or Fourteenth Amendments. A "constitutional injury is a prerequisite for a municipal-liability claim; that is, absent an underlying deprivation of a plaintiff's constitutional rights, municipal liability cannot lie." *Rivers v. Borough of Olyphant*, No. 20-0246, 2021 WL 2682048, at *7 (M.D. Pa. June 30, 2021) (collecting cases). Without a viable underlying constitutional violation, Plaintiff cannot plausibly allege that he suffered an injury caused by either: (1) an unconstitutional policy or custom; or (2) the municipality's deliberate indifference and/or failure to adequately train or supervise its employees. *See, e.g., Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003) ("[F]or there to be municipal liability, there still must be a violation of the plaintiff's

15

constitutional rights . . . . There must be a 'direct causal link' between the policy and a constitutional violation." (first quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992); then quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989))); *see also Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (explaining that a municipality "cannot be liable on a failure to train theory for conduct that . . . did not violate the plaintiff['s] constitutional rights."). Plaintiff, therefore, cannot state a claim for municipal liability against the Borough.

The Court, accordingly, dismisses Count Seven against the Borough without prejudice.

## F.    Punitive Damages (Count Eight)

Plaintiff asserts a cause of action for punitive damages against Schuler, in his individual capacity, for his "dishonest[], malicious, wanton, and reckless" conduct. (FAC ¶ 86.) "Punitive damages are a remedy incidental to a cause of action" and "not a substantive cause of action in and of themselves." *Moody v. Torres*, No. 23-20677, 2025 WL 399736, at *4 (D.N.J. Feb. 5, 2025) (collecting cases). Punitive damages are, nevertheless, available in a Section 1983 action against individual capacity defendants when they "have acted with a reckless or callous disregard of, or indifference to, the rights and safety of others." *Joyce v. City of Sea Isle City*, No. 04-0534 2008 WL 906266, at *25 (D.N.J. Mar. 31, 2008) (internal quotations marks omitted) (quoting *Keenan v. City of Phila.*, 983 F.2d 459, 470-71 (3d Cir. 1992)). Whether a defendant acted with such intent is a question of fact. *Gaines v. Busnardo*, No. 13-6566, 2015 WL 5771233, at *8 (D.N.J. Sep. 30, 2015) (citing *Coleman v. Rahija*, 114 F.3d 778, 787 (3d Cir. 1997)). Because a claim for punitive damages is not an independent cause of action, the Court dismisses Count Eight against Schuler, in his individual capacity, without prejudice.

16

## IV.   CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion. The Court dismisses with prejudice: (1) Counts One through Six asserted against Schuler in his official capacity; (2) Count Seven asserted against TFPD; and (3) Count Eight asserted against Schuler in his official capacity. The Court dismisses without prejudice: (1) Counts One through Six asserted against Schuler in his individual capacity; (2) Count Seven asserted against the Borough; and (3) Count Eight asserted against Schuler in his individual capacity.[9] The Court will issue an order consistent with this Memorandum Opinion.

_____

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: May __28__, 2026

---

[9] For the avoidance of doubt, the Court dismisses Count Eight without prejudice so that Plaintiff may properly seek punitive damages in his prayer for relief and not as a separate cause of action.

17